# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD M. OSBURN, et al., | Case No. 1:18-cv-00310-LJO-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN PART PLAINTIFFS' MOTION TO AMEND |
| v. | |
| OCWEN LOAN SERVICING LLC, et al., | |
| Defendants. | (ECF Nos. 29, 30, 42, 44, 45) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Plaintiffs Ronald M. Osburn and Sadie M. Osborn ("Plaintiffs") filed this action against Defendants Onewest Bank, Ocwen Loan Servicing LLC ("Ocwen"), Mortgage Electronic Registration Systems Inc. ("MERS"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Western Progressive LLC ("Western Progressive"). (ECF No. 1.) Currently before the Court is Deutsche Bank, MERS, Ocwen, and Western Progressive's ("Defendants") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court heard oral argument on June 20, 2018. Counsel Catarina Benitez appeared for Plaintiffs and counsel Lindsey Kress appeared for Defendants. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the June 20, 2018 hearing, as well as the Court's file, the Court issues the following findings and recommendations.

# I.

## PROCEDURAL HISTORY

On May 3, 2018, Plaintiffs filed this action alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638; as well as state law claims for fraud, wrongful foreclosure, quiet title, cancellation of instruments, negligent misrepresentation, breach of contract, and unfair business practices in violation of California Business and Professions Code § 17000. (ECF No. 1.) On March 20, 2018, Plaintiffs filed a motion for a temporary restraining order which was granted on March 26, 2018. (ECF No. 16.) On March 28, 2018, Plaintiffs posted a bond in the amount of $1,500.00.

Defendants filed a response to the motion for a restraining order on April 2, 2018. (ECF Nos. 20-22.) Plaintiff filed a reply on April 5, 2018. (ECF No. 24.) On April 6, 2018, District Judge Lawrence J. O'Neil issued an order requiring Plaintiffs to show cause why the temporary restraining should not be dissolved. (ECF No. 26.) Plaintiffs and Defendants filed a response to the order to show cause and Defendants filed the instant motion to dismiss on April 9, 2018. (ECF Nos. 27, 29-30, 32.)

On April 10, 2018, Judge O'Neill issued an order dissolving the temporary restraining order and the motion to dismiss was referred to the undersigned on April 12, 2018. (ECF No. 35, 36.) On April 23,2018, Plaintiffs filed a notice of voluntary dismissal as to Defendant Onewest Bank; and Defendant Onewest Bank was dismissed from this action on April 24, 2018. (ECF Nos. 39, 41.)

Plaintiffs did not file an opposition to the motion to dismiss, but on June 6, 2018, filed a motion to amend the complaint and an application to hear the motion on shortened time. (ECF No. 42.) Plaintiffs' application to hear the matter on shortened time was granted. (ECF No. 43.) Defendants filed an opposition to the motion to amend on June 13, 2018. (ECF Nos. 44, 45.) Plaintiffs filed a reply on June 15, 2018, that was stricken from the record for being unsigned. (ECF No. 46, 48.) On this same date, Plaintiff filed a signed reply. (ECF No. 47.)

/ / /

/ / /

## II.

## COMPLAINT ALLEGATIONS

Around January 2005, Plaintiffs purchased real property located at 4523 West Evergreen Court, Visalia, California and in the County of Tulare by executing mortgage loans. (Compl. ¶¶ 11, 16, ECF No. 1.) Originally, the Beneficiary and Trustee was America's Wholesale Lender and the monthly payment on the property was $1,584.86. (Compl. ¶ 16.) Plaintiffs made their payments in a timely manner. (Compl. ¶ 16.) The deed of trust was recorded on January 14, 2005, and there was a second deed of trust recorded for the remaining loan balance. (Compl. 16.)

Around February 2006, Plaintiffs' refinanced the property with Home Loan Center Inc. and signed the refinance paperwork, including a note and deed of trust. (Compl. 20.) About March 7, 2006, a substitution of trustee and full reconveyance was recorded listing MERS as the beneficiary and substituting ReconTrust Company N.A. as the new trustee. (Compl. ¶ 21.) About March 17, 2006, a fixed/adjustable rate note was executed by Plaintiffs with IndyMac Bank. (Compl. ¶ 22.) Although both Plaintiffs executed the original note, the note only bore the signature of Plaintiff Ronald Osburn. (Compl. ¶ 22.) The deed of trust executed on March 17, 2006, was in the amount of $348,400.00 and listed Indymac Bank as the lender, Transnation Title Insurance Company as the trustee, and MERS as the beneficiary. (Compl. ¶ 23.) The note executed provided for acceleration of the loan and that the lender would provide prior notice of acceleration and had the power to sell the property in the event of default. (Compl. ¶ 25.) There was also a deed of trust for a secondary lien recorded in the amount of $87,100.00. (Compl. ¶ 26.)

Plaintiffs began making mortgage payments in the amount of $2,178.68 per month. (Compl. ¶ 24.) On May 2, 2006, a substitution of trustee and full reconveyance was recorded. (Compl. ¶ 27.)

Around 2011, Plaintiffs received a loan modification from IndyMac Bank and the payments were $880.00 per month. (Compl. ¶ 28.) On June 26, 2012, a substitution of trustee and full reconveyance was recorded to provide that the indebtedness was paid off and the second deed of trust was transferred to MERS as nominee for Onewest. (Compl. ¶ 29.) Around October 16, 2013, Plaintiff received notice that IndyMac would be transferring the mortgaging servicing rights

to Ocwen.  (Compl. ¶ 33.)

On March 28, 2014, it was recorded that the second mortgage was satisfied in full. (Compl. ¶ 30.)  In 2016, Plaintiffs noticed that their mortgage payments were increasing and decreasing without explanation.  (Compl. ¶ 34.)  When they attempted to contact Ocwen, they were informed that there was an automatic stay in effect as a result of their filing bankruptcy although Plaintiffs had not filed bankruptcy.  (Compl. ¶ 34.)  Ocwen eventually shut down Plaintiffs' mortgage account in 2016, and they no longer had access to their account and were prevented from making payments.  (Compl. ¶ 35.)

Around January 18, 2017, an assignment of deed of trust was recorded listing MERS as nominee for IndyBank and all interest in the loan was assigned to Deutsche Bank as Trustee for IndyMac.  (Compl. ¶ 31.)  Plaintiffs have no knowledge of when Onewest became involved in their loan or how IndyMac acquired their mortgage.  (Compl. ¶ 32.)

Around March 2017, Plaintiffs received a notice of default from Western Progressive LLC. (Compl. ¶ 36.)  From March 20, 2017, to June 29, 2017, Plaintiffs received approximately sixty copies of notice of trustee sale indicating Defendants' intent to foreclose on the property.  (Compl. ¶ 37.)  A notice of trustee sale was recorded by Western Progressive on June 29, 2017, with the trustee sale set to take place on March 27, 2018.  (Compl. ¶ 37.)

Plaintiffs generally allege that the notes were not legally transferred or delivered and the defendants acted with the intent to defraud them.  (Compl. ¶¶ 39-52.)  Plaintiffs bring this action against Defendant Ocwen for violation of RESPA and TILA; against Deutsche Bank, Ocwen, and Mers for fraud and negligent misrepresentation; and against Ocwen, MERS, Deutsche Bank, and Western Progressive for wrongful foreclosure, quiet title, cancellation of instruments, breach of contract, and unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, § 17200, et seq.  (Compl. pp. 11-27.)  Plaintiffs are seeking monetary damages and injunctive relief.  (Compl. p. 27.)

/ / /

/ / /

/ / /

# III.

## LEGAL STANDARD

### A.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

/ / /

**B.     Motion to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).

In determining whether to grant leave to amend, the court considers five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint."  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004).  The factors are not given equal weight and futility alone is sufficient to justify the denial of a motion to amend.  Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1245 (N.D. Cal. 2014), appeal dismissed (Feb. 25, 2015).  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  Id.

**IV.**

**DISCUSSION**

Defendants move to dismiss on the ground that Plaintiffs do not have standing to challenge the assignment of their loan as they are not a party to the any pooling and servicing agreement or any assignment of the loan.  Defendants request that the Court take judicial notice of court records and documents filed in the public record.

As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion.  United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011).  There are two exceptions to this rule, when the complaint necessarily relies on the documents or where the court takes judicial notice of documents.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort

to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006); <u>Lee</u>, 250 F.3d at 689. The Court grants Defendants' request for judicial notice of court filings and matters of public record. The judicially noted records include:

1. January 9, 2017 Corporate Assignment of Deed of Trust from MERS, as nominee for Indymac Bank to Deutshce Bank Trust Company, recorded on January 18, 2017. (ECF No. 30-1 at 33-34.)

2. Notice of Default, filed March 20, 2017. (ECF No. 30-1 at 36-39.)

3. Notice of Trustee's Sale, recorded on June 29, 2017. (ECF No. 30-1 at 41-43.)

4. Voluntary Petition for Bankruptcy filed by Ronald Osburn in case no. 17-13730 of the Eastern District of California on September 28, 2017. (ECF No. 30-1 at 45-52.)

5. Order Dismissing case no. 17-13730 of for failure to timely file documents. (ECF No. 54.)

6. Voluntary Petition for Bankruptcy filed by Ronald Osburn on November 30, 2017 in case no. 17-14566. (ECF No. 30-1 at 55- 63.)

7. Order granting trustee's motion to dismiss for failure to appear, timely oppose, or otherwise defend the matter in case no. 17-14566. (ECF No. 30-1 at 65.)

**A. Motion to Dismiss**

1. <u>Standing</u>

Defendants argue that the crux of Plaintiffs' complaint is that Defendants did not receive proper reassignment of the loan and thus lack standing to initiate foreclosure proceedings, but this fails as a matter of law as Plaintiffs do not have legal authority to challenge the assignment of their loan. Defendants argue that Plaintiffs are not parties to any of the contracts that they are attempting to challenge and at most their allegations would make the contracts voidable, and not void. Defendants contend that the cause of action for fraud, wrongful foreclosure, quiet title, cancellation of instruments, negligent misrepresentation, and unfair business practices rest upon a theory that fails as a matter of law and should be dismissed without leave to amend.

**a.     Whether Plaintiffs have standing to bring a pre-foreclosure suit**

In <u>Yvanova v. New Century Mortg. Corp.</u>, 62 Cal.4th 919 (2016), the California Supreme Court considered whether the "borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." <u>Yvanova</u>, 62 Cal.4th at 923. The Court held that, "because in a nonjudicial foreclosure only the original beneficiary of a deed of trust or its assignee or agent may direct the trustee to sell the property, an allegation that the assignment was void, and not merely voidable at the behest of the parties to the assignment, will support an action for wrongful foreclosure." <u>Id.</u>  However, this holding was "narrow," and established "only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." <u>Id.</u> at 924.  A void contract or transaction is "without legal effect" and is a "mere nullity." <u>Id.</u> at 929.  A voidable contract or transaction is one that may be declared void, but is not void in itself, and may be subject to ratification by the parties.  <u>See id.</u> at 930.

Defendants argue that the California Supreme Court carved out this limited exception that only applies to post-foreclosure claims and cannot be used to preempt a threatened nonjudicial foreclosure by a suit challenging the foreclosing party's right to proceed as is at issue here.  The Court reviews subsequent case law to determine if courts have found that the holding in <u>Yvanova</u> is limited to post foreclosure proceedings.

Some courts have found that the holding in <u>Yvanova</u> would not be limited to post foreclosure actions.  For instance, in <u>Lundy v. Selene Fin., LP</u>, No. 15-CV-05676-JST, 2016 WL 1059423 (N.D. Cal. Mar. 17, 2016), a federal district court considered the split that existed in California courts as to "whether the borrower on a home loan secured by a deed of trust may base an action for wrongful foreclosure on allegations a purported assignment of the note and deed of trust to the foreclosing party bore defects rendering the assignment void." <u>Lundy</u>, 2016 WL 1059423 at *8.  The most prominent case which held that such plaintiffs do not have standing to sue was <u>Jenkins v. JP Morgan Chase Bank, N.A.</u>, 216 Cal.App.4th 497 (2013), as modified (June

12, 2013), and disapproved of by <u>Yvanova</u>, 62 Cal.4th 919).  <u>Lundy</u>, 2016 WL 1059423 at *8.
The opposite conclusion was reached by <u>Glaski v. Bank of Am., N.A.</u>, 218 Cal.App.4th 1079
(2013), which held that "a plaintiff has standing to challenge a completed foreclosure based on
allegations that the foreclosing party lacks authority due to an assignment that was void."

The <u>Lundy</u> court found that the holding in <u>Yvanova</u> was likely to be applied to two actions
addressing the same issue in the pre-foreclosure context that the California Supreme Court had
stayed while <u>Yvanova</u> was decided, <u>Keshtgar v. U.S. Bank</u>, 334 P.3d 686 (2014), and <u>Mendoza v.
JP Morgan Chase Bank</u>, 337 P.3d 493 (2014).  <u>Lundy</u>, 2016 WL 1059423 at *8.  The court noted
that at the time that <u>Glaski</u> issued it was the lone minority position on one side of the split of
California courts.  <u>Id.</u> at *9.  However, <u>Glaski</u> had been validated by the California Supreme Court
and the <u>Lundy</u> court determined that the California Supreme Court would again reject <u>Jenkins</u>
holding that pre-foreclosure plaintiffs are not prejudiced by initiation of foreclosure proceedings
based on an allegedly void assignment.  <u>Id.</u> at *11.  The court predicted that the California
Supreme Court would limit the holdings in <u>Jenkins</u> to only those pre-foreclosure plaintiffs who
lack a specific factual basis to bring their claims.  <u>Id.</u> at *13; <u>but see</u> <u>Shetty v. ARLP Securitization
Tr. Series 2014-2</u>, No. CV1605467BROGJSX, 2017 WL 8220702, at *9 (C.D. Cal. Jan. 19, 2017)
(Rejecting <u>Lundy</u> and finding the majority of authority in California addressing the issue following
<u>Yvanova</u> have held that it did not create standing for borrowers prior to foreclosure.  Because to
establish standing to challenge an assignment in either a pre- or post-foreclosure context the
plaintiff must assert harm that produces invasion of his legal protected interest, prejudice or injury.
While a plaintiff who has been foreclosed upon meets this standard, a borrower who has not yet
suffered a foreclosure does not.)

Following the opinion in <u>Yvanova</u>, the California Supreme Court denied review in
<u>Keshtgar</u>, and <u>Mendoza</u> and remanded for reconsideration in light of the decision in <u>Yvanova</u>.  <u>See
Mendoza v. JPMorgan Chase Bank, N.A.</u>, 6 Cal.App.5th 802 (2016), review denied (Mar. 22,
2017); <u>Keshtgar v. U.S. Bank</u>, N.A., No. 2D CIVIL NO. B246193, 2016 WL 4183750, at *1 (Aug.
8, 2016) (unpublished).  On remand, the <u>Keshtgar</u> court held that <u>Yvanova</u> had no bearing on pre-
foreclosure actions because the finding was limited to post foreclosure actions.  <u>Keshtgar</u>, 2016

WL 4183750 at *1.  The <u>Mendoza</u> court analyzed the plaintiff's claims and found she did not have standing to bring the action.  <u>Mendoza</u>, 6 Cal.App.5th at 807.

In <u>Saterbak v. JPMorgan Chase Bank, N.A.</u>, 245 Cal.App.4th 808 (2016), reh'g denied (Apr. 11, 2016), review denied (July 13, 2016), the Court of Appeal for the Fourth District considered whether the trial court erred in finding that a plaintiff who was seeking to stop a threatened foreclosure did not have standing to bring the suit.  The plaintiff alleged that the assignments of her loan were invalid because of untimely securitization of the deed of trust and robo-signing.  <u>Saterbak</u>, 245 Cal.App.4th at 812.  However, the court found that "California courts do not allow such preemptive suits because they 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature.' "  <u>Id.</u> at 814.  Allowing a plaintiff to bring such a suit would impose an additional requirement that the defendant demonstrate that it is authorized to initiate a foreclosure which "would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy."  <u>Id.</u> at 814-15 (quoting <u>Gomes v. Countrywide Home Loans, Inc.</u>, 192 Cal.App.4th 1149, 1156 (2011)).  Since the plaintiff had brought a pre-foreclosure action challenging the lenders ability to foreclose, she did not have standing.  <u>Saterbak</u>, 245 Cal.App.4th at 815.  The court found that <u>Yvanova</u> did not alter the standing issue because the Supreme Court expressly limited the holding to post-foreclosure suits.  <u>Id.</u>

Other courts have similarly held that <u>Yvanova</u> does not allow a plaintiff to bring a pre-foreclosure suit to challenge the lenders ability to foreclose before a nonjudicial foreclosure occurs and the legal authority rejecting preemptive foreclosure suits survives.  <u>See</u> <u>Rocha v. CIT Bank, N.A.</u>, No. 17-CV-05082-BLF, 2018 WL 1609636, at *3 (N.D. Cal. Apr. 3, 2018); <u>Saterbak v. Nat'l Default Servicing Corp.</u>, No. 15CV956-WQH-BGS, 2016 WL 4430922, at *7 (S.D. Cal. Aug. 22, 2016); <u>Martinez v. CitiMortgage, Inc.</u>, No. D070284, 2017 WL 1101645, at *4 (Mar. 24, 2017); <u>Kaurloto v. U.S. Bank, N.A.</u>, No. 16-CV-06652-JFW-GJSX, 2016 WL 6808117, at *3 (C.D. Cal. Nov. 17, 2016), appeal dismissed sub nom. <u>Kaurloto v. U.S. Bank NA</u>, No. 16-56853, 2017 WL 6403850 (9th Cir. Mar. 1, 2017); <u>Baker v. Citi Mortg., Inc.</u>, No. A148458, 2018 WL 1790709, at *9 (Apr. 16, 2018)(unpublished).  Recently in an unpublished case, the Ninth Circuit

recognized the holding in <u>Yvanova</u>, but found that "[n]othing about <u>Yvanova</u> suggests that, contrary to longstanding precedent on this point, California now allows an action for wrongful foreclosure before a foreclosure takes place." <u>Wasjutin v. Bank of Am., N.A.</u>, No. 16-55974, 2018 WL 1918194, at *2 (9th Cir. Apr. 24, 2018) (unpublished); <u>see</u> <u>also</u> <u>Yagman v. Nationstar Mortg., LLC</u>, 699 F.App'x 634, 635 (9th Cir. 2017) ("As we have in the past, we join the majority of courts that have declined to extend <u>Yvanova</u>.").[1]

The Court is persuaded by the weight of authority finding that under California law a plaintiff cannot bring a preemptive suit to stop foreclosure on property. The California Supreme Court has not held that a borrower may file a preemptive challenge to stop foreclosure and the holding in <u>Yvanova</u> was "narrow," and established "only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because he or she was in default on the loan and was not a party to the challenged assignment." <u>Id.</u> at 924. Further, the Supreme Court stated that the ruling was a narrow one and they did "not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed." <u>Yvanova</u>, 62 Cal.4th at 924.

Additionally, "the provisions setting forth California's nonjudicial foreclosure scheme (§§ 2924–2924k) cover every aspect of the exercise of a power of sale contained in a deed of trust. The purposes of this comprehensive scheme are threefold: (1) to provide the beneficiary-creditor with a quick, inexpensive and efficient remedy against a defaulting trustor-debtor; (2) to protect the trustor-debtor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." <u>Jenkins</u>, 216 Cal.App.4th at 509–10. "The comprehensive statutory framework established [in sections 2924 to 2924k] to govern nonjudicial foreclosure sales is intended to be exhaustive." <u>Debrunner v. Deutsche Bank Nat. Tr. Co.</u>, 204 Cal.App.4th 433, 440 (2012) (citations omitted). Allowing a

---

[1] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); <u>see</u> <u>Animal Legal Def. Fund v. Veneman</u>, 490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

plaintiff to bring a preemptive suit to preclude foreclosure would impose an additional requirement that the defendant demonstrate that it is authorized to initiate a foreclosure which "would be inconsistent with the policy behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy." Saterbak, 245 Cal.App.4th at 814-15.

Further, to establish standing to challenge an assignment in either a pre- or post-foreclosure context the plaintiffs must assert harm that produces invasion of their legal protected interest, prejudice or injury. The Yvanova court found that a plaintiff who has been foreclosed upon clearly meets this standard, Yvanova, 62 Cal.4th at 937, a borrower who has not yet suffered a foreclosure does not.

Finally, the majority of courts, including the Ninth Circuit, have declined to extend that holding in Yvanova to allow a plaintiff to file an action for wrongful foreclosure before a foreclosure takes place. The Court finds that Plaintiffs do not have standing in this action to challenge the threatened foreclosure.

**b.       Whether the Complaint Alleges Void or Voidable Assignment**

Further, even assuming that Plaintiffs have standing, the allegations do not demonstrate that the assignment was void.

Plaintiff alleges that the note dated March 17, 2006, was not duly endorsed, transferred and delivered to anyone after its initial date of execution and was never duly endorsed, transferred, and delivered to the Trust prior to the closing date of April 27, 2006. (Compl. ¶ 41.) Plaintiff further alleges that the note was never actually transferred or delivered to the Depositor and by the Depositor to the custodian on behalf of the Trust prior to the closing date of April 27, 2006, and therefore the note was never lawfully negotiated and physically delivered to the trust. (Compl. ¶ 44.) Plaintiff contends that the note was never actually transferred or delivered to the depositor or the custodian on behalf of the trustee for the trust prior to the closing date or at all. (Compl. 47.) Plaintiff also contends that about March 2009, a loan sale agreement was created but transfers to and from Onewest were never made. (Compl. ¶ 42.)

"The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust." Saterbak, 245 Cal.App.4th at 816 (citations omitted).

Cases hold that assignments which "allegedly breach[ ] a term or terms of a PSA" are voidable rather than void because "the beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts." Hacker v. Homeward Residential, Inc., 23 Cal.App.5th 111, 121 (2018). California courts have rejected the argument that the trustee needs to have actual physical possession of the note and deed of trust to institute nonjudicial foreclosure proceedings. Kalnoki v. First Am. Tr. Servicing Sols., LLC, 8 Cal.App.5th 23, 42 (2017), reh'g denied (Feb. 22, 2017), review denied (May 10, 2017) (citing Siliga v. Mortgage Electronic Registration Systems, Inc., 219 Cal.App.4th 75, 84 n.5 (2013); Shuster v. BAC Home Loans Servicing, LP, 211 Cal.App.4th 505, 511 (2012); Debrunner, 204 Cal.App.4th at 441.

Plaintiff also contends that the pooling and service agreement required that on the closing date, "the depositor will deliver or cause to be delivered to the trustee the mortgage file, which contains among other things, the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse, ... an assignment in recordable form of the mortgage, ... and, if applicable, all recorded intervening assignments of the mortgage and any riders or modifications to the mortgage note and mortgage. . . ." (Compl. ¶ 43.) Plaintiff alleges that this was never done. (Id.)

Plaintiff contends that the 2017 assignment did not occur by April 27, 2006 and was not recorded until January 18, 2017 long after the trust has closed. (Compl. ¶ 45.) Plaintiff alleges that the assignment was ineffective because the trust could not have accepted the deed of trust after the closing date pursuant to the PSA and noncompliance with the PSA and the requirements of a REMIC trust. (Id.) Also, if assignment was after the closing date, the REMIC statutes would terminate the trust by extinguishing its tax-exempt status. (Id.) Because this transfer did not occur by April 27, 2006, but on January 18, 2017, long after the trust has closed, the assignment was ineffective and void ab initio. (Compl. ¶ 48.)

There is no requirement under California law for the assignment of a deed of trust to be recorded in order for an assigned beneficiary to foreclose. Calvo v. HSBC Bank USA, N.A., 199 Cal. App. 4th 118, 123 (2011). Assignments of debt, in contrast to the assignment of the security interest, are commonly not recorded. Herrera v. Fed. Nat. Mortg. Assn., 205 Cal.App.4th 1495,

1506 (2012), disapproved of by <u>Yvanova</u>, 62 Cal.4th 919).  Therefore, a lender can assign the promisory note to another entity in an unrecorded document that was not publicly disclosed.  <u>Herrera</u>, 250 Cal.App.4th at 1506.  Further, the allegations do not state that any transfers were not timely recorded, but the complaint alleges that the 2017 assignment of the deed of trust was recorded on January 18, 2017.

In <u>Mendoza</u> the plaintiff made similar arguments alleging that the untimely assignment into a securitization trust and robo-signing made the assignments void.  <u>Mendoza</u>, 6 Cal.App.5th at 811.  The court considered that <u>Glaski</u> had found that allegations that an assignment that occurred after the closing date were sufficient to support an allegation that the assignment was void and defeat an attack on the ground of standing.  <u>Mendoza</u>, 6 Cal.App.5th at 811-12.  However, courts routinely hold that a borrower does not have standing to challenge an alleged breach of the terms of the PSA because it is the beneficiary and not the borrower who have the right to ratify the trustee's unauthorized acts.  <u>Id.</u> at 813-817 (collecting cases).  Similarly, the court rejected the contention that failing to transfer the corpus into the REMIC within three months would violate federal law and make the transaction void, noting that other courts had rejected this argument.  <u>Id.</u> at 818.

"While transferring a note to the REMIC might have negative tax consequences for the REMIC investors, Plaintiffs have not argued any reason why such a transfer would be 'meaningless and legally unenforceable.' "  <u>Mendoza</u>, 6 Cal.App.5th at 14 (quoting <u>Williams v. GMAC Mortg. Inc.</u>, No. 13 civ. 4315 (JRO), 2014 WL 2560605, at p. *4 (S.D.N.Y. June 6, 2014)).  A later transfer into the REMIC may have negative tax consequences, but losing favorable tax treatment does not necessarily jeopardize the tax status of the entire trust.  <u>Mendoza</u>, 6 Cal.App.5th at 819.  "The tax implications of securitization simply do not render a voidable transaction void."  <u>Id.</u>  The court concluded that allegations that there were violations of the PSA or federal law make the contract voidable, but not void.  Finally, the court found that because the bank, and not the borrower is the injured party, if the assignment was in fact robo-signed, it would be voidable, not void, at the injured party's option.  <u>Id.</u> (citing <u>Pratap v. Wells Fargo Bank, N.A.</u>, 63 F.Supp.3d 1101, 1109 (N.D. Cal. 2014)).  It is the prevailing view that homeowners lack standing to

1  challenge the validity of robo-signatures because the transaction is voidable, not void.  Mendoza, 6

2  Cal.App.5th at 820; Kaurloto, 2016 WL 6808117, at *5.

3  Similarly, courts hold that a transfer of a secured loan in violation of the terms of the

4  securitized trust is at most voidable, rather than void, and the homeowner has no standing to

5  challenge the transaction.  Martinez, 2017 WL 1101645, at *4; Renard v. JP Morgan Chase Bank,

6  N.A., No. LACV1700820JAKGJSX, 2017 WL 8292774, at *8 (C.D. Cal. Dec. 13, 2017) see also

7  Suruki v. Ocwen Loan Servicing, LLC, No. 17-15039, 2018 WL 2327207, at *1 (9th Cir. May 23,

8  2018) (unpublished) (belated assignment of loan renders transaction voidable, not void).

9  The Court finds that the allegations in the complaint would make the assignments voidable,

10  but not void.  Accordingly, even if the California Supreme Court was to extend Yvanova to allow

11  for pre-foreclosure actions, Plaintiffs would not fall within the limited exception recognized by

12  Yvanova to bring a wrongful foreclosure action.

13  For these reasons, Plaintiffs claims based upon the alleged improper assignment of the

14  loans are premature and cannot proceed in this action.  Plaintiffs allege that Defendants Deutshce

15  Bank, Ocwen, and MERS committed fraud because the note, dated March 17, 2006 was not duly

16  endorsed transferred and delivered to anyone after its initial date of execution and was not

17  delivered to the trust prior to the closing date of April 27, 2006, and the signature of Plaintiff Sadie

18  Osburn was removed.  Plaintiffs contend that the note was never actually transferred or delivered

19  to the trust prior to the closing date of April 27, 2006.  Plaintiffs allege that the defendants

20  misrepresented or concealed the true facts regarding the transfer of their note and deed of trust by

21  assigning it to Indymac after the closing date.  The assignment of the trust did not occur by April

22  27, 2006, but on January 18, 2017 after the trust had closed.  The pooling and service agreement

23  required the original mortgage note, endorsed in blank, to be delivered with all intervening

24  endorsements showing the complete chain of endorsement and this was not done.  Plaintiffs allege

25  that these actions were done with intent to defraud them and the public with regards to the status of

26  the note.

27  Plaintiffs' negligent misrepresentation cause of action alleges the Plaintiffs contend that

28  due to the deficiencies identified in the complaint the note was never properly transferred and

Defendants MERS Ocwen, and Deutsche Bank misrepresented that they retained rights under the March 17, 2006 deed of trust.

Plaintiffs contend that the notice of default recorded on March 20, 2017, was void due to the failure to properly endorse the loan, transfer the loan, and the modification of signatures on the note during the loan transfer process and bring a claim to quiet title.

Plaintiffs also seek cancellation of the notice of default, notice of trustee sale, and assignment of deed of trust.

The UCL claim alleges that Defendants misrepresented information causing an assignment of their loan to entities that did not have the right to receive the assignment; used their power to make transfers of the note and deed of trust after the closing date of the pooling and servicing agreements and thereby provided false information to the public and financially interested persons which are fraudulent business practices. Plaintiffs contend that defendants engaged in fraudulent business practices by implementing improper and premature foreclosure proceedings; excusing and recording false and misleading documents; executing and recording legal documents without legal authority; failing to disclose the principal for which documents were being recorded in violation of California Civil Code section 1095, and acting as beneficiaries and trustees without legal authority.

These claims all rest upon the improper assignment of the loans and Plaintiff's do not have standing under California law to bring a preemptive action to stop the foreclosure on their property. Accordingly, the Court finds that Defendants' motion to dismiss should be granted as to Plaintiffs' cause of action for fraud, wrongful foreclosure, quiet title, cancellation of instruments, negligent misrepresentation, and unfair business practices.

2.  Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605

Plaintiffs contend that about November 26, 2017, a qualified written request ("QWR") was provided to Ocwen by Federal Express and it was not acknowledged within five days of receipt. When they inquired of Ocwen, Ocwen stated that it had never received the request.

"Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process." Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1008 (9th Cir. 2002).

Pursuant to section 2605(e), any servicer of a related mortgage loan who receives a QWR from the borrower for information relating to the loan must provide a written response acknowledging the receipt of the correspondence within 5 days unless the action requested is taken with the time period. 12 U.S.C. § 2605(e)(1)(A). A borrower who fails to comply with this section is liable for actual damages or statutory damages not to exceed $2,000. 12 U.S.C. § 2605(f)(1). Section 2605 only relates to the servicing of a loan, not to its ownership or validity. Tamburri v. Suntrust Mortg., Inc., 875 F.Supp.2d 1009, 1014 (N.D. Cal. 2012).

While Plaintiff alleges that Ocwen has a pattern or practice of failing to respond to QWRs and failing to acknowledge receipt, the complaint does not include any factual allegations sufficient to support the allegation. Plaintiffs contend that on a single occasion, November 26, 2017, they sent a request that was not responded to within five days.

Moreover, to state a RESPA claim, courts generally require a showing of pecuniary loss from the failure to comply to state a claim. Allen v. United Fin. Mortg. Corp., 660 F.Supp.2d 1089, 1097 (N.D. Cal. 2009). Plaintiffs have not included any factual allegations about the request that was submitted on November 26, 2017, nor have they alleged damages due to the RESPA violation. Plaintiffs' conclusory allegations that they suffered damages is not sufficient to state a claim.

Here, Plaintiffs are alleging defects in the loan documents and transfer of the loan between different entities. RESPA is not designed to cover disputes as to the ownership or validity of a loan. Tamburri, 875 F.Supp.2d at 1014. To the extent that Plaintiffs' allege damages in this action from the defective transfers, the damages suffered would not be from the failure to respond to such inquiries, but would be due to the foreclosure of the property. Such damages are not sufficient to state a claim under RESPA because they are not caused by the failure to respond to the QWR. Id.

The Court recommends that Defendants' motion to dismiss the RESPA claims should be granted.

3.     Truth in Lending Act, 15 U.S.C. § 1638

Plaintiffs assert that since 2016, Defendant Ocwen has refused to provide monthly mortgage statements to them and has refused to communicate with Ron Osburn about the subject

loan. Plaintiffs contend this is a violation of 15 U.S.C. § 1638(f)(1). Defendants argue that Plaintiff's claims are least partially barred by the statute of limitations. Further, Defendants argue that Plaintiffs claim damage by being unable to ascertain their monthly statement amount but section 1638 does not require information regarding monthly payment amounts on the billing cycle statements.

Section 1638(f) provides that a creditor, assignee, or servicer of a residential mortgage shall transmit to the debtor, for each billing cycle, a statement that sets forth the following information:

> (A) The amount of the principal obligation under the mortgage.
> (B) The current interest rate in effect for the loan.
> (C) The date on which the interest rate may next reset or adjust.
> (D) The amount of any prepayment fee to be charged, if any.
> (E) A description of any late payment fees.
> (F) A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage.
> (G) The names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1441a-1 of Title 12).
> (H) Such other information as the Board may prescribe in regulations.

15 U.S.C. § 1638(f)(1).

Pursuant to TILA, any claim based on a failure to make material disclosures must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e); Hallas v. Ameriquest Mortg. Co., 406 F.Supp.2d 1176, 1183 (D. Or. 2005), aff'd, 280 F.App'x 667 (9th Cir. 2008). Here, the complaint in this action was filed on March 3, 2018. (ECF No. 1.) Therefore, any claim that arose prior to March 3, 2017, would be barred by the statute of limitations.

Plaintiffs TILA action is based on the failure to provide mortgage statements, which Plaintiffs allege started in 2016. Therefore, the statute of limitations has run on the TILA claim. Further, to the extent that Plaintiffs contend that mortgage statements should continue to be provided, the notice of default and election to sell was filed March 20, 2017. (ECF No. 30-1 at 36-39.) The notice of default informed Plaintiffs that they were required to pay $18,931.43 by April 4, 2017 to avoid foreclosure. (ECF No. 30-1 at 36.) California requires a lender to contact the borrower 30 days prior to filing a notice of default "the borrower's financial situation and explore

1   options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a).  Plaintiffs do not

2   allege that they were not contacted prior to the notice of default being filed.

3           Plaintiffs' cannot allege any harm due to the failure to provide mortgage statements once

4   the notice of default was filed for they were already in default and the mortgage company was no

5   longer accepting monthly payments.  At this point, Plaintiffs were required to bring the loan

6   current to avoid foreclosure.  The Court finds that Plaintiffs have failed to state a claim for

7   violation of TILA.  The Court recommends that Defendants' motion to dismiss the TILA claim be

8   granted.

9           4.      Breach of Contract

10          In the complaint, Plaintiffs allege that from the time that they executed a loan modification

11  agreement until the date the complaint was filed they fully complied with the loan modification

12  terms and conditions by making the monthly mortgage payments to make them current and

13  Defendants breached the agreement by refusing to apply their monthly payments.  Defendants

14  argue that Plaintiffs cannot compel performance of the contract while they are in default as

15  evidenced by the complaint.

16          A cause of action for damages for breach of contract under California law is comprised of

17  the following elements: "(1) the contract, (2) plaintiff's performance or excuse for

18  nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."  Careau & Co.

19  v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990), as modified on denial of reh'g

20  (Oct. 31, 2001); accord Wall St. Network, Ltd. v. New York Times Co., 164 Cal.App.4th 1171,

21  1178 (2008).  "[I]t is elementary that one party to a contract cannot compel another to perform

22  while he himself is in default."  Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1367  (2010)

23  (citations omitted).

24          Plaintiffs allege that a loan modification was received from IndyMac Bank in 2011, and

25  payments at the time were $880.00 per month.  (Compl. ¶ 28.)  Around 2016, after Ocwen began

26  servicing their loan, Plaintiffs noticed that their monthly mortgage payments were increasing and

27  decreasing without an explanation.  (Compl. ¶¶ 34, 113.)  After communication with Ocwen in

28  2016, the mortgage account was shut down and Plaintiffs were prevented from having access to

their account and making payment towards their loan.  (Compl. ¶ 35.)  In March 2017, Plaintiffs received a notice of default.  (Compl. ¶ 36, 115.)  Plaintiffs allege that each month that a payment was made they were presented with different amounts to pay, and were left with no choice but to guess what their payment requirement was each month.  (Compl. ¶ 116.)  Plaintiffs paid the amount they believed they were required to pay, many months amounting to more than the minimum payment set forth in the loan agreement.  (Compl. ¶ 116.)

While Plaintiffs allege that they complied with all terms of the 2011 modification, the Court is not required to accept as true allegations that contradict exhibits attached to the complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  The loan modification agreement attached to the complaint and signed by Ron Osburn on November 22, 2010, shows that Plaintiffs' payments were $965.16 per month beginning on December 1, 2010 for 60 months including impounds which could increase.[2] (ECF No. 1-16 at 4.)  The agreement also provides that the payment could increase on December 1, 2016, December 1, 2017, and December 1, 2017.  (Id.)  The notice of default attached to Plaintiffs' complaint shows that Defendants were in default as of January 1, 2016.  (ECF No. 1-13 at 4.)  The Court finds that Plaintiffs' allegations that they complied with all requirements of the loan modification are contradicted by other statements and the exhibits attached to the complaint, and therefore, are not entitled to a presumption of truth.

The Court finds that Plaintiffs have failed to allege a plausible breach of contract claim against Defendants.  The Court recommends that Defendants' motion to dismiss the breach of contract claim should be granted.

5.    Conclusion

Based on the foregoing, the Court finds that Defendants' motion to dismiss should be granted.  The Court next considers Plaintiff's motion to amend the complaint.

---

[2] A court generally cannot consider material outside of the complaint when ruling on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).  However, the incorporation by reference doctrine allows material that is attached to the complaint to be considered, as well as "unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of the document."  Corinthian Colleges, 655 F.3d at 999.

**B.**     **Motion to Amend**

Plaintiffs seek to file an amended complaint to delete the RESPA claims and amend information regarding the remaining causes of action.  Again, Defendants counter that the crux of the amended complaint is that Defendants did not receive proper assignment of the loan; and therefore, amendment is futile as Plaintiffs lack standing.  Plaintiff replies that recently in <u>Hacker</u>, the court evaluated a similar situation and was allowed to bring suit challenging the foreclosure.

1.     <u>First Amended Complaint</u>

In the first amended complaint, Plaintiffs deleted the RESPA cause of action and included the following additional factual allegations.

In the first cause of action for fraud, Plaintiffs allege that section 2.01 of the pooling service agreement required the seller to transfer to the depositor all interest of the seller of the mortgage loans.  (First Am. Compl. ("FAC") ¶ 57.)  Plaintiffs contend that the assignments of the deed of trust purportedly assigning all beneficial interest in the note was not conducted by the proper party and thus was void ab initio.  (<u>Id.</u>)

In the second cause of action for wrongful foreclose, Plaintiffs contend that Defendants had a sale date set for May 3, 2018, and have placed the sale on hold to gain an advantage in this proceeding.  (FAC ¶ 68.)  A new sale date is set for July 17, 2018.  (<u>Id.</u>)

In the third cause of action for quiet title, Plaintiff contend that they have attempted to make payments to the proper noteholder but have been prevented from doing so because the proper noteholder's identify has not been determined and prior attempts and offers to tender have been refused.  (FAC ¶ 73.)

In the sixth cause of action for breach of contract, Plaintiffs allege that in or around 2016, Ocwen closed Plaintiffs' account and stopped reporting the loan to credit bureaus.  In or about September 2016, when Plaintiffs reviewed their credit reports they noticed that the mortgage became inactive, as if it no longer existed as of 2016.  (FAC ¶ 100.)  As Plaintiff's believed that they account had been closed and was no longer reported to credit bureaus, Plaintiff did not know, and Ocwen refused to communicate with them, an adequate payment method.  (FAC ¶ 101.)

In the seventh cause of action for violation of the Truth in Lending Act, Plaintiffs allege

that starting in January 2017 and through March 2018, Ocwen has refused to provide mortgage statements to Plaintiff and has refused to communicate with Plaintiff Ron Osburn about the subject loan. (FAC ¶ 111.) As a result, Plaintiff Ron Osburn's credit has been ruined. (Id.)

In the eighth cause of action for violation of the UCL, Plaintiffs alleges that Defendants were not the beneficiaries or noteholders at the time that the notice of default was recorded, and that a new sale date has been set for July 17, 2018. (FAC ¶ 119.)

2.    Discussion

Plaintiffs argue that recently the California Court of Appeals decided <u>Hacker</u> which addressed a similar situation to that presented here. Plaintiff contends that Defendants misconstrue their argument which is that MERS did not have authority to assign the deed of trust, not that the loan was not timely transferred into the trust. Plaintiffs contend that similar to the argument made by the plaintiff in <u>Hacker</u>, the assignment was void. Therefore, they argue that the fact that Plaintiffs are not parties to the pooling and servicing agreement is not relevant. Plaintiffs also argue that the deed of trust and the note were split and there is no underlying right by any of the named defendants to enforce the note.

a.    **Plaintiffs do not have standing to bring action to preempt foreclosure**

In <u>Hacker</u>, the plaintiff was transferred property as part of a settlement agreement and sued multiple defendants alleging claims for breach of written contracts; breach of the covenant of good faith and fair dealing; wrongful, improper and fraudulent trustee sale; fraud; unfair business practices; cancellation of void instruments; slander of title; declaratory relief; and specific performance of contract. 23 Cal.App.5th at 113-115. Some of the claims were premised on an alleged breach of the terms of the deed of trust and short sale agreement and others challenged the assignment of the deed of trust and subsequent recorded instruments that he alleged were void and a sham. <u>Id.</u> at 115. The defendants filed a demurrer which was granted without leave to amend. <u>Id.</u> at 116-17.

On appeal, the appellate court found that the trial court properly found that the plaintiff failed to allege facts establishing an ownership interest sufficient to confer standing. <u>Id.</u> at 118. The plaintiff had not attached the grant deed and did not establish that he was the owner of the

grant deed in the filed complaints. Id. at 119. However, the appellate court also found that the trial court misconstrued the nature of the plaintiff's claim. Plaintiff was not alleging that the parties violated the terms of the PSA nor was he challenging any aspects of the securitization process whereby the original mortgage was transferred to the trust. Id. The plaintiff alleged that a subsequent assignment of the deed of trust was void because at the time of the transfer, it was void because the loan had already been sold to someone else and there was no longer a beneficial interest in the loan to convey. Id.

The appellate court found that the trial court abused its discretion by failing to allow the plaintiff the opportunity to file an amended complaint. Id. at 121. The property had been acquired in a foreclosure sale and the plaintiff alleged that the seller had no power to foreclose on the property because it was never the true owner of the deed of trust. Id. Had the plaintiff alleged that the assignment violated the PSA it would merely have been voidable, not void. Id. Here, the plaintiff was clearly alleging that the foreclosing party never possessed legal title to the property; and therefore, the assignment was void. Id.

The Court finds Hacker to be distinguishable from the instant action on two grounds. First, the foreclosure in Hacker had already occurred. Therefore, Hacker falls within the limited exception recognized by Yvanova to bring a wrongful foreclosure action. However, while this action alleging that there is a pending foreclosure, it has not yet occurred. So, this action is not within the exception recognized in Yvanova.

Second, the plaintiff in Hacker was not challenging the assignment based on the securitization process by which the mortgage was transferred. The plaintiff claimed that at the time of the second assignment, the lender had previously sold the interest in the loan so no longer possessed interest in the loan. Here, Plaintiffs are not alleging that the defendants had sold or transferred the loan to someone else and no longer hold the legal interest in the loan. Plaintiff is challenging the securitization process itself.

Plaintiff also alleges that section 2.01 of the pooling service agreement required the seller to transfer to the depositor all interest of the seller of the mortgage loans; and that the the deed of trust and the note were split so the defendants have no authority to foreclose on the property.

Pursuant to section 2.01 of the agreement, the depositor transferred to the seller all interest in the mortgage loan (a); and all interest in the trust fund (b).[3] (ECF No. 1-17 at 82.) Citing <u>In re Veal</u>, 450 BR 897, 916 (2011), Plaintiffs argue that Exhibit 7 demonstrates that the deed of trust was assigned without the note and therefore, the note was unsecured and unenforceable.

<u>In re Veal</u>, was a bankruptcy case in which the question considered was whether the bank had standing to seek relief from the automatic bankruptcy stay; and is not persuasive in the circumstances presented here. <u>In re Veal</u> recognized that "under the common law generally, the transfer of a mortgage without the transfer of the obligation it secures renders the mortgage ineffective and unenforceable in the hands of the transferee." <u>In re Veal</u>, 450 B.R. at 915. However, some states have altered this rule by statute. <u>Id.</u> at 916-17. <u>In re Veal</u> recognized that California was one of the states that had changed the common law rule by the nonjudicial foreclosure statute. <u>Id.</u> at 916-17, n.34; <u>In re Marks</u>, No. BAP CC-12-1140-KIDH, 2012 WL 6554705, at *7 (B.A.P. 9th Cir. Dec. 14, 2012), aff'd, 624 F. App'x 963 (9th Cir. 2015).

Because of the exhaustive nature of the nonjudicial foreclosure scheme, "California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." <u>Lane v. Vitek Real Estate Indus. Grp.</u>, 713 F.Supp.2d 1092, 1098 (E.D. Cal. 2010) (citing <u>Moeller v. Lien</u>, 25 Cal.App.4th 822, 834 (1994); <u>I.E. Assoc. v. Safeco Title Ins. Co.</u>, 39 Cal.3d 281 (1985)). There is "no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale." <u>Debrunner</u>, 204 Cal.App.4th at 441; <u>Lane</u>, 713 F.Supp.2d at 1099; <u>see also</u> <u>In re</u> Marks, 2012 WL 6554705, at *8 ("California's nonjudicial foreclosure statutes are governed by CAL. CIV. CODE ("CCC") §§ 2924 through 2924k, which do not require that the note be in the possession of the party initiating foreclosure."); <u>Jenkins</u>, 216 Cal.App.4th at 513 (we

---

[3] Although the amended complaint states that the pooling and service agreement is attached at exhibit 16, there is no exhibit 16 and the Court finds no such agreement attached. (FAC ¶ 42.) However, the pooling and servicing agreement is attached to the March 3, 2018 complaint. (ECF No. 1-17.)

find the statutory provisions, because they broadly authorize a "trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate a nonjudicial foreclosure (§ 2924, subd. (a)(1), italics added), do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale. Jenkins, 216 Cal.App.4th at 513.

As previously addressed, Plaintiffs allegations that the transfer was not completed pursuant to the terms of the agreements only alleges a voidable transaction. Hacker, 23 Cal.App.5th at 121. Plaintiffs have not included any facts in the proposed amended complaint to sufficient to allege a void transaction. Plaintiffs allegations in the proposed amendment are substantially similar to those in the complaint and allege voidable, but not void transactions. For these reasons, and the reasons discussed supra at IV.A.1, the Court finds that Plaintiffs do not have standing in this action to challenge the threatened foreclosure.

To the extent that Plaintiffs allege that Defendants are wrongfully avoiding foreclosure on the property to prevent them from having standing, the Court rejects this argument. On March 3, 2018, Plaintiffs filed this action pre-foreclosure. (ECF No. 1.) Further, Plaintiffs filed a motion on March 20, 2018, for a temporary restraining order to stop the foreclosure sale on their home. (ECF No. 4.) Judge O'Neill issued a temporary restraining order on March 26, 2018. (ECF No. 16.) The temporary restraining order was dissolved on April 10, 2018. (ECF No. 35.)

Plaintiffs have chosen to prosecute this action seeking to stop the foreclosure sale of their home, and the Court can infer no evil motive on behalf of Defendants because the relief Plaintiff sought, to stop the foreclosure sale, has been received. It was Plaintiffs decision to bring this premature action, and the defendants decision to defer the foreclosure sale while this action is being litigated to determine if they have the right to foreclose is reasonable.

### b. TILA

Defendants argue that the amended complaint states that the alleged TILA violations began in January 1, 2017, and are therefore, barred by the statute of limitations. Defendants continue to argue that Plaintiffs' have not include allegations to support a claim for damages as required by the statute.

Plaintiffs reply that Defendants did not provide monthly statements beginning in 2016 and no statements were received until March 2018. Plaintiffs contend that the purpose of the statute is to ensure that borrowers receive monthly mortgage statements that disclose the current status of their obligation, to provide accurate information about their mortgage, and to allow the borrower to understand any errors and how to avoid them. Plaintiffs argue that they were required to guess at their monthly mortgage payments and the only way to get Ocwen's attention was to stop making mortgage payments with the hope that the errors would be resolved. Plaintiffs state that the inaccurate credit reporting caused damage to their credit, monetary damage, and damage to their reputation.

The Court finds that Plaintiffs have failed to state a TILA claim for the reasons discussed in IV.A.3. In the amended complaint, Plaintiffs allege that inaccurate credit reporting caused damage to their credit report, but the complaint only alleges that in or around 2016, Ocwen closed Plaintiffs' account and stopped reporting the loan to credit bureaus. (FAC ¶ 100.) In or about September 2016, when Plaintiffs reviewed their credit reports they noticed that the mortgage became inactive, as if it no longer existed as of 2016. (FAC ¶ 100.) While Plaintiffs make the conclusory allegation that Plaintiff Ron Osburn's credit has been ruined, there are no factual allegations to support such a claim. Even if the account had been closed and the loan was not reported to the credit bureaus, it is unclear how the failure to report would "ruin" his credit. If no reports were made then there would be no report that the loan was delinquent or a foreclosure was pending.

The limitations period here would be based on the filing of the complaint, and would be March 3, 2017. Plaintiffs fail to allege any factual allegations by which the Court can reasonably infer that they suffered damages from the failure to provide periodic statements after March 3, 2017.

### c. Breach of Contract

Defendants argue that Plaintiffs' breach of contract claim remains deficient as they did not perform their obligations under the contract. In the amended complaint, Plaintiffs allege that they did not know, and Ocwen refused to communicate with them, an adequate payment method. (FAC

¶ 101.)   However, the allegations in the complaint also indicate that Plaintiffs were receiving periodic statements prior to January 1, 2017.  (FAC ¶ 111.)

While Plaintiffs argue that they did not know who or where to pay their mortgage, on October 16, 2013, Plaintiffs' received a notice of serving transfer which stated that the mortgaging servicing rights were transferred to Defendant Ocwen.  (FAC ¶ 96.)  Around 2015, Defendant Ocwen was servicing their loan and that the payments were increasing and decreasing without an explanation by Ocwen.  (FAC ¶ 97.)  Defendant Ocwen eventually shut down their mortgage account and prevented them from having access to their account.  (FAC ¶ 99.)  Around 2016 Defendant Ocwen closed their account.  (FAC ¶ 100.)  The allegations in the complaint demonstrate that Plaintiffs were aware that Ocwen was servicing their loan and indicates that they were receiving information on the monthly payment amounts through 2016.

Further, the notice of default and election to sell under deed of trust, dated March 13, 2017, informed Plaintiffs that they were required to pay $18,931.43 as of April 4, 2017.  (ECF No. 30-1 at 36.  To find out the amount to pay, or arrange for payment to stop the foreclosures, Plaintiffs were to contact:

**DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee for INDYMAC INDX MORTGAGE LOAN TRUST 2006-ARll, MORTGAGE PASS-THROUGH CERTIFICATES Series 2006-ARll, By Ocwen Loan Servicing, LLC, its attorney in-fact**

**C/0 Western Progressive, LLC**
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328
Servicer Phone: 877-596-8580

(ECF No. 30-1 at 37.)  Plaintiffs were informed by the notice of default the amount due to bring the loan current and who to contact to make such payment.

Plaintiffs factual allegations are insufficient to correct the deficiencies in the breach of contract claim identified <u>supra</u> at IV.A.4.  Plaintiffs have failed to state a cognizable claim for breach of contract.

3.   <u>Conclusion</u>

Based on the foregoing, the Court finds that Plaintiffs' motion to amend should be granted

in part.  The request to file the proposed first amended complaint should be denied as futile because Plaintiffs have failed to allege any cognizable claims.

For the reasons discussed in this findings and recommendations, Plaintiffs do not have standing to bring a pre-foreclosure suit to challenge the nonjudicial foreclosure on their property. Therefore, the Court recommends that the cause of action for fraud, wrongful foreclosure, quiet title, cancellation of instruments, negligent misrepresentation, and unfair business practices be dismissed without leave to amend.

However, Plaintiffs may be able to cure the defects in the TILA and breach of contract claims.  Accordingly, the Court recommends that the TILA and breach of contract claims be dismissed with leave to amend.[4]

## V.

## RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion to dismiss, filed April 9, 2018, be GRANTED;

2       Plaintiffs' cause of action for fraud, wrongful foreclosure, quiet title, cancellation of instruments, negligent misrepresentation, and unfair business practices be DISMISSED WITHOUT LEAVE TO AMEND;

3.      Plaintiffs' motion to amend, filed June 6, 2018, be GRANTED IN PART AND

---

[4] The parties are advised that pursuant to Rule 11 of the Federal Rules of Civil Procedure,

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  If the Court finds that Rule 11 has been violated, the court can impose appropriate sanctions on an attorney, law firm, or party that violated the rule.  Fed. R. Civ. P. 11(c)(1)(2)(3).

DENIED IN PART; and

4.     Plaintiff be GRANTED leave to file a first amended complaint to cure the deficiencies in the TILA and breach of contract cause of action.[5]

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.


Dated:  June 22, 2018

_____
STANLEY A. BOONE
UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiffs are advised that they have not been granted leave to file an amended complaint. The district judge will issue an order addressing the findings and recommendations and address whether Plaintiffs may file an amended complaint.